**DAMACH, INC., Plaintiff,**

v.

**CITY OF HARTFORD, Abraham Ford, Defendants.**

**No. Civ 3:98CV00695 (PCD).**

United States District Court, D. Connecticut.

April 26, 2001.

Daniel A. Silver, Law Office of Daniel A. Silver, New Britain, CT, for Damach Inc, plaintiff.

US Court of Appeals, Office of the Clerk, New York City, for U.S. Court of Appeals, notice only.

Ann F. Bird, Corporation Counsel's Office, Hartford, CT, for City of Hartford, defendant.

## MEMORANDUM OF DECISION

DORSEY, Senior District Judge.

This case is presented for consideration on remand by the Court of Appeals to permit briefing by the parties on the question of whether "adult cabaret" was a permitted use under the Hartford Municipal Zoning Code prior to its 1994 amendment. A further question is why the parties stipulated that such was the case. Despite plaintiff's notice of the basis for the original decision, supplementation of the record was not sought in its motion for reconsideration of the original decision but was raised as to prompt the remand for such supplementation.

Plaintiff claims that defendants' attempted preclusion of its conduct of an adult cabaret in premises it leases in a B–1 zone is premised on an unconstitutional 1994 amendment of the Zoning Code. It claims that in so amending the code, and allegedly prohibiting an adult cabaret in a B–1 zone,[1] the City did not develop a record of secondary effects of use, in the B–1 zone, as an adult cabaret, as to justify the prohibition against the free speech provision of the First Amendment of the United States Constitution. Such a record is required for such a prohibition when intended to avoid undesirable secondary effects and not to suppress First Amendment permitted speech. *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 49, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986).

This Court's original ruling on July 28, 1999, held an adult cabaret was not a permitted use in the B–1 zone prior to the 1994 amendment, and thus such a record was not required. The 1988 amendment permitted adult establishments, defined specifically without including adult cabarets to which the § 35–6 prohibition thus applied. Adult establishments were then permitted in three zones, not including the B–1 zone. In 1994, adult cabarets were included in the definition of adult establishments, and thus permitted in the three identified zones.

DISCUSSION:

1) Plaintiff claims the benefit of the rule fixing the law of the case. It argues that prior litigation expressly or impliedly adjudicated whether an adult cabaret was a permitted use in a B–1 zone prior to the 1994 amendment. Accepting issue preclusion as applicable to another case, we look to plaintiff's cited decision, by the Connecticut Superior Court in *Squillante v. Zoning Board of Appeals of*

*the City of Hartford*, No. CV 960566513S, 1997 WL 614583 (Conn.Super. Sept.26, 1997). Squillante was apparently plaintiff's principal, and defendants raise no issue of his identity with plaintiff. That case was an appeal from the Hartford Zoning Board of Appeals which had upheld a zoning administrator's finding a violation in conducting adult entertainment in a B–1 zone. That court held that a pending application for a liquor permit with the Connecticut Department of Liquor Control did not vest a right in Damach, Inc. to use the premises in question for adult entertainment. The court further held that the only evidence supporting existence of adult entertainment prior to 1994 on the premises in question—the liquor permit application and notice of the pendency thereof and an understanding with the landlord—was insufficient, and "the simple fact is that the record reflects that no adult entertainment was actually being provided on the premises prior to" the 1994 amendment. While the zoning status of the premises was in question, the court did not decide the permitted uses of the premises under the regulations prior to the 1994 amendment. It cannot be said that the Superior Court decision stands as the law of the case here with respect to plaintiff's claim that an adult cabaret was a permitted B–1 zone use in 1994. That issue was not fully litigated; its determination was not necessary to resolution of that case; the reference to the use claimed here as a permitted use was dicta; and no appeal lay from the decision.

2) Plaintiff next argues that the Hartford Zoning Regulations allowed plaintiff's claimed adult cabaret as a matter of state law. The Regulations included a table of permitted uses for zones which,

---

**1.** Plaintiff mischaracterizes the amendment which actually permitted, not prohibited, cabarets. It did designate zones in which, as

adult establishments, such use would be permitted.

absent any other indication, designated the "principal or primary use permitted." Uses "customarily incidental" to the principal use were also permitted. § 35–85b. Any other uses were prohibited. § 35–6. Live entertainment, of any sort, is not a listed use. As of 1988, adult establishments were a permitted use in three zones.[2] The B–1 zone was not one of the three. The argument is that entertainment is customarily incidental to drinking and eating places and thus was permitted in conjunction with the listed, permitted, B–1 uses. All plaintiff allegedly is doing is determining the nature of the entertainment and the attire, or lack thereof, of the entertainers. An incidental use cannot be a primary use but must be minor in significance or subordinate in relation to the primary use. *Lawrence v. Zoning Bd. of Appeals of the Town of North Branford,* 158 Conn. 509, 264 A.2d 552 (1969). The trial court there had reversed a Zoning Board of Appeals' rejection of a claimed, permitted, accessory use. The Supreme Court reversed the trial court, holding that the claimed use was not an accessory use as it was not customary nor incidental to the primary, permitted use. An accessory use must be "subordinate and minor in significance." *Id.* at 511, 264 A.2d at 554. It must be customary in the sense of being "commonly, habitually and by long practice ... established as reasonably associated with the primary use." *Id.* at 512–13, 264 A.2d at 554. This was viewed as a matter of construction, seeking the legislative intent. The Board's view of the language was held entitled to deference and found to be reflective of a reasonable exercise of discretion. *Id.* at 514, 264 A.2d at 555. Applying the forgoing principles, plaintiff cannot be found to have shown that an adult cabaret, nor live entertainment in any form, was a permitted B–1 use in 1994.

It was not shown to be customary, incidental, minor in significance, or subordinate to eating or drinking places. Nor was there evidence that live entertainment or adult cabarets were usually maintained in connection with, nor commonly, habitually, or by long practice established as reasonably associated with eating or drinking places. Neither live entertainment nor adult cabarets were shown to be appropriately or necessarily an accessory use to eating or drinking places. The zoning regulations, by dealing with adult entertainment and cultural, entertainment and recreational uses, specifically and separately from eating and drinking places, Ex. 3, § 35–584, cannot be said to reflect an intent to regard adult cabarets as live entertainment and, in turn, incidental to or customary for eating and drinking places. *See, e.g., Spero v. Zoning Board of Appeals of the Town of Guilford,* 217 Conn. 435, 442–43, 586 A.2d 590, 594 (1991). In making the claim that adult cabarets were permitted as accessaries to live entertainment and to the permitted principal uses, plaintiff has the burden of proof. It has failed to meet that burden in this respect. Plaintiff's citation of evidence of defendants' experts as supportive of its claim misstates the evidence and is without merit. It is pertinent to note that plaintiff did not avail itself of the right to have the Zoning Board of Appeals consider its claim that an adult cabaret was substantially similar to the uses listed for the B–1 zone as permitted by § 35–852. In so noting, the Court is not deciding the merits or efficacy of such a procedure nor suggesting that any such procedure, or its results, would affect the determination herein.

■ 3) Plaintiff claims that § 35–6 does not pertain and that it does not preclude an adult cabaret. Plaintiff argues that its

---

**2.** This was specifically permitted per the 1988 amendment. There was no evidence that

such use was permitted or existant prior to the 1988 amendment.

right to conduct an adult cabaret is sustained by *Bisecco v. Norwalk Zoning Commission,* No. CV950147133, 1997 WL 206637 (Conn.Super.Apr.17, 1997). The reliance is misplaced. Plaintiffs there were faced with zoning regulation amendments that prohibited the uses being made of their property. They sought relief from enforcement of the prohibition on the basis that their uses, nonconforming under the amended regulations, were grandfathered. The court rejected a defense claim that the uses were not permitted prior to the amendment and thus could not be grandfathered. The court noted there was no cited authority for the claim. To the contrary, it cited Conn.Gen.Stat. § 8–2, and held the amendment to be invalid as against plaintiffs' preexisting nonconforming use. Plaintiff here presents no such use.

Plaintiff argues that if an adult cabaret was not permitted prior to either 1988 or 1994, there was no need, or reason, to enact its prohibition in either amendment. The Zoning Code predated .1988 and by § 35–6 prohibited any use not specified as permitted. The result was a blanket prohibition of adult entertainment, arguably contrary to the First Amendment. *See Schad v. Borough of Mt. Ephraim,* 452 U.S. 61, 77, 101 S.Ct. 2176, 68 L.Ed.2d 671 (1981); *Young v. American Mini Theatres, Inc.,* 427 U.S. 50, 75, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976); *754 Orange Avenue, Inc. v. City of West Haven,* 761 F.2d 105, 111–12 (2d Cir.1985). By permitting adult establishments in certain zones, the City, in 1988, apparently sought to avoid a constitutional frailty arguably resulting from that prohibition. That action and its expansion in 1994 permitted adult establishments in certain zones. The City cannot be seen as acting in the belief that it was thereby permitting what was already permitted. The view that adult cabarets should be construed as within adult entertainment and deemed permitted prior to 1988, as a constitutionally valid alternative to a blanket prohibition, is without merit because the record contains no substantiation of such a legislative intent, a matter within plaintiff's burden of proof.

4) Plaintiff argues that if the zoning code is read to have prohibited adult entertainment throughout Hartford prior to 1988 and adult cabarets prior to 1994, the code would have been violative of the First Amendment of the Constitution. An alternative construction permissive of the code is claimed on the basis that a legislative enactment that can be construed as to comply with the Constitution is so construed to avoid being held unconstitutional. That rule may be invoked if the question presented involved the present code which could be preserved by adopting a construction consistent with the Constitution. That is not the question here.

5) Defendant's stipulation that adult cabaret was a permitted use in the B–1 zone is unavailing as previously ruled to be a question of law, not fact. So also is plaintiff's reliance on the memorandum of the City's planning staff, Ex. 2. Defendant now disclaims the stipulation as erroneously entered.

CONCLUSION: Accordingly, plaintiff is not found to have proven that an adult cabaret was a permitted use in the B–1 zone prior to the 1994 Amendment of the Zoning Code. The holding of the original ruling dismissing plaintiff's complaint, for the additional reasons set forth therein, is adhered to. Judgment will enter accordingly.

SO ORDERED.